*CHARLES I. DREIFUS v. UNION SAV. BANK & TR. CO.

**Trust Company Liable for Bonds Certified by It and Found to be Worthless by Holder, Relying on Certificate.**

A trust company as trustee under a deed of trust or mortgage having certified that "this bond is one of a series of bonds mentioned in the mortgage or deed' of trust within referred to," well knowing that none of the property described in such mortgage belongs to the mortgagor, and redelivering to the mortgagor the bond thus certified without restriction on its use, becomes liable to a pledgee of such bond who relied upon such certificate to his prejudice, regardless of the motive in making such certificate.

*Reversed, no op., Union Sav. Bk. & Tr. Co. v. Dreifus, 87 O. S. 000; 58 Bull. 75.

Dreifus v. Trust Co.

ERROR to common pleas court.

Lem S. Miller and Wm. D. James, for plaintiff in error.

Lawrence Maxwell and Joseph S. Graydon, for defendant in error.

**GIFFEN, P. J.**

The original action was commenced by Charles I. Dreifus to recover from the defendant, the Union Savings Bank & Trust Co., the face value of six bonds for $500 each, with interest. The bonds were a part of a series of 500 bonds executed by the Georgetown Water, Light, Heat & Power Co., a corporation organized under the laws of the state of Kentucky, for the purpose of purchasing and taking over the property, rights, interests and franchises of the Georgetown Water, Gas, Electric & Power Co., a corporation also organized under the laws of the state of Kentucky. To secure the payment of such bonds the new company executed and delivered to the defendant as trustee a mortgage or deed of trust of the property, interests and franchises of the old company, although the board of directors had authorized its execution only after the purchase of the property of the old company had been completed. The defendant accepted the trust, and signed the following certificate indorsed on the bond:

"It is hereby certified that this bond is one of a series of bonds mentioned in the mortgage or deed of trust within referred to."

Three hundred of these bonds as certified were, upon the order of the board of directors of the obligor, delivered by the defendant to Holzman & Company, brokers, who pledged six of them to the plaintiff, who afterwards discovered that they were and at all times had been worthless. He claims that he relied to his prejudice upon the certificate of the defendant as trustee, and that the same was a false representation of the identity and security of the bonds.

The purpose and effect of the certificate is made more apparent by the recital in each bond that:

"This bond shall not become obligatory until it shall have

become authenticated by a certificate indorsed thereon, duly executed by said trust company, the trustee named therein."

This statement prevented the bond from becoming obligatory until it was identified by the trustee as one of the series of bonds mentioned in the mortgage or deed of trust, and authorized such trustee to render it truthworthy by signing a certificate to that effect, although it could not reasonably be expected that it would thereby become a guarantor of the value of the security described in the mortgage nor of the priority of the lien.

But the certificate itself, when read in connection with other statements in the bond and the actual knowledge of the trustee of the whole transaction, becomes very significant and may amount to a representation of a material fact upon which an intending purchaser or pledgor may rely and recover if he suffers loss, not simply because the representation is untrue, but because the trustee knew it to be false and therefore fraudulent.

The language of the certificate, "the mortgage or deed of trust within referred to," directs us to the body of the bond where we find the statement that "these bonds are secured by a deed of trust or mortgage," whereas the deed of trust or mortgage under which the defendant was acting secured nothing, because none of the property described therein belonged to the mortgagor, and all of which was well known to the defendant. The statement that the mortgage was duly recorded in Scott county, Kentucky, is also found in the bond, whereas the mortgage delivered to the defendant was not then and never has been recorded in Scott county, Kentucky, nor any other place, all of which the defendant well knew.

This identification of each of the six bonds, pledged to the plaintiff, as one of a series of 500 bonds secured by a recorded mortgage, while apparently true, is in fact false and known by the defendant to be false. It would be a novel construction of the legal duty of a trustee in certifying bonds to hold it to be a mere formal matter, unaffected by the actual knowledge he has of their infirmity. It is this knowledge of the falsity of

Dreifus v. Trust Co.

the representations that makes them fraudulent, independent of the motive of the defendant. *Taylor* v. *Leith*, 26 Ohio St. 428.

Counsel for defendant rely upon the case of *Tschetinian* v. *Trust Co.* 186 N. Y. 432 [79 N. E. Rep. 401], where a certificate like the one in this case was held not to make the trustee a guarantor of the quality and extent of the security, but the court is careful to exclude all questions of fraud or deceit, active or passive.

In the case of *Bauerschmidt* v. *Trust Co.* 89 Md. 507 [43 Atl. Rep. 790], the decision is qualified by the statement, "the bonds being in fact secured by a mortgage of property." In other words, there was an actual lien upon tangible property, and not a sham and false pretense. The plain duty of the defendant in this case, when ordered as trustee by resolution of the board of directors of the new company to deliver the bonds to Holzman & Company, was to withhold its certificate until the property described in the mortgage had been conveyed by the old company to the new company, the mortgagor; or if objection were made to this mode of transfer, then to require that the conveyance of the property and the delivery of the bonds be simultaneous.

A prior resolution of the board of directors, set forth in the mortgage itself, authorized the president and secretary to execute and deliver a first mortgage or trust deed upon all the property owned by the company, as soon as they shall receive the conveyance for the plants directed to be purchased. If this natural and sensible provision had been observed and followed there could be no legal objection to a delivery of the bonds by the trustee to Holzman & Company or to any other person designated by the board of directors; but in the absence of any property upon which the mortgage could operate as a lien, the certificates and delivery of the bond by the trustee, with full knowledge of such defect, was inexcusable and fraudulent. Counsel for plaintiff have argued the case upon the ground of negligence; but the pleadings and proof present a case of constructive fraud or gross negligence amounting to fraud.

It is claimed, however, that the act of the defendant in

4 O. C. C. Vol. 33.

certifying the bonds and delivering the same to Holzman & Company was not the proximate cause of plaintiff's loss; but that such loss was directly caused by the fraudulent pledge of the bonds by Ross Holzman, a member of Holzman & Company.

The certificate of the trustee was, according to the statement in the bond, the final authentication that made them obligatory, and the delivery to Holzman & Company gave them apparent currency, the natural and probable consequence of which was to induce purchasers to rely upon them as being what they purported to be. The loss to the plaintiff would have been the same had Ross Holzman sold the bonds to him for cash and accounted for the proceeds to the mortgagor. His firm was clothed with apparent authority of disposition, the bonds being complete in form and negotiable by delivery. The plaintiff was dealing with him as a broker and not as an officer of the mortgagor, and relied upon the certificate of the defendant as trustee. It seems quite clear therefore that the act of the trustee was the direct cause of the loss to the plaintiff.

The court erred in arresting the case from the jury at the close of plaintiff's evidence.

The judgment is reversed and the cause remanded for a new trial.

### ON REHEARING.

Upon application for a rehearing of this case it becomes important to ascertain certain facts, as shown by the evidence, before applying the law. The bonds were, according to the resolution of the board of directors of the new company, delivered to Holzman & Company "for and on behalf of this company," and so far as the record discloses the defendant bank had no communication with them as to the disposition of the bonds, but apparently assumed that the right of disposition was absolutely in the board of directors of the mortgagor. Nor is there any evidence that Holzman & Company were given any direction by any one as to the disposition of the bonds. It is certain that they were not the agents of the bank, and no trust or confidence was reposed by the bank in the firm or any member thereof with respect to the bonds. Colonel Nelson, the president

Dreifus v. Trust Co.

of the new company, told Mr. Stark, the trust officer of the bank, that it was necessary to have the bonds to consummate the deal and effect a transfer of the property from the old company to the new; but there was no assurance by the board of directors that this would be done. It is apparent, however, from the resolution of the board of directors of April 21, 1905, which is set forth in the trust deed or mortgage, that it was wholly unnecessary to deliver the 300 bonds to Holzman & Company, in order to effect a transfer of the property:

"Be it resolved that the president and secretary of this company be empowered, authorized and directed upon receipt from the Georgetown Water, Gas, Electric & Power Company of a proper and sufficient conveyance in fee simple of all the property, rights, franchises and contracts belonging or appurtenant to the Georgetown Water, Gas, Electric & Power Company of a proper and sufficient conveyance in fee simple of all the property, rights, franchises and contracts belonging or appurtenant to the Georgetown Water, Gas, Electric & Power Company to pay it therefor two hundred and fifty thousand ($250,000) dollars, par value of the capital stock of this company, and one hundred thousand ($100,000) dollars first mortgage bonds of this company."

The trust officer of the bank knew the contents of the mortgage including this resolution, and retained 200 of the bonds amounting to $100,000, for the purpose therein expressed. The other 300 bonds were intended for distribution among the stockholders and Colonel Nelson so told Mr. Stark at the time. It seems not to have occurred to Colonel Nelson nor Mr. Stark that the trustee whose certificate gave life to the bonds ought to have retained possession of them until the property, intended to secure their payment, was conveyed or about to be conveyed to the mortgagor.

The bank did not retain even constructive possession or control of the bonds, although it accepted the trust for a valuable consideration.

In the case of *Westwood (Bd. of Ed.) v. Sinton,* 41 Ohio St. 504, relied upon by counsel for defendant in error, the board took up and paid certain bonds issued by it and left them with

its treasurer, who was also a member of the board, with instructions to cancel them, which he failed to do, but negotiated them before maturity as collateral security for a loan. *Held:*

"There was no negligence on the part of the board in not seeing that its treasurer complied with its instructions to cancel the bonds."

The treasurer was not only the custodian of the bonds, but was charged by the board with the performance of a specific act with reference to them.

If the bank in the case before us had placed the certified bonds in the hands of one of its officers with instructions to deliver them only when the property intended for their security was acquired by the mortgagor, the facts would be more like those in the case cited.

Although the bonds were delivered to Holzman & Company on the order of the board of directors of the obligor, they were in law delivered to the latter, without any restrictions by the bank on their use.

When Mr. Stark testified that the purpose in delivering the bonds was to effect a transfer of the property of the old company to the new company, he evidently referred to the purpose expressed by Colonel Nelson, as he nowhere discloses any purpose on the part of the bank other than to obey the order of the board of directors of the new company. Such company was entitled to the possession of its own bonds after being certified, provided they were in fact what they purported to be; but when the certificate was false the obligor was no more entitled to the unrestricted possession than a stranger would be.

*Farmers' Bank* v. *Safe & Lock Co.* 66 Ohio St. 367 [64 N. E. Rep. 518; 58 L. R. A. 620; 90 Am. St. 586], was a case of a stolen certificate of stock, wherein it was held that a pledgee in good faith acquired no title to the stock as against the real owner.

The case of *Baxendale* v. *Bennett*, 3 Q. B. D., 525, is of the same nature, and while it is true that Bramwell, L. J., asks the question at page 530,

"Is it not a rule that every one has a right to suppose that

Dreifus v. Trust Co.

a crime will not be committed, and to act on that belief?"
yet he significantly adds on the same page:

"The defendant here has not voluntarily put into any one's
hands the means, or part of the means, for committing a crime."

That is the precise distinction in the case before us. The
bank after certifying to the identity of the bonds, voluntarily
and unnecessarily parted with possession and thereby furnished
the means for committing a crime as well as the means for de-
ceiving the public, of which plaintiff was one only.

Upon the same principle the railway company was held
liable in the case of *C. N. O. & T. P. Ry.* v. *Bank,* 56 Ohio St.
351 [47 N. E. Rep. 249; 43 L. R. A. 777], and the case of
*Westlake Board of Ed.* v. *Sinton, supra.*

The allegation of the petition that the bonds were delivered
to Holzman & Company for "the purpose of negotiation and
sale" was not at the trial supported by any evidence of an
active present intention to so deliver them; but it does appear
that the bonds were in such form that delivery to any one
put in his hands all the means for such use.

The difficulty in the case is one of fact rather than law,
and while our findings from the evidence may differ from those
which a jury or other tribunal might make, yet it is reasonably
certain that the transaction was unusually careless and such as
a reasonably prudent man would shun because of the risk.

A rehearing of the case is therefore refused.

**Smith** and **Swing, JJ.,** concur.